UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERTO CARLOS US CHAN,<br><br>Petitioner,<br><br>v.<br><br>JULIO HERNANDEZ, et al.,<br><br>Respondents. | CASE NO. 2:26-cv-03345<br><br>ORDER |

## I

## INTRODUCTION

This matter comes before the Court on Roberto Carlos Us Chan's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court has reviewed the materials filed in support of and in opposition to the Petition, the rest of the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the Petition. Dkt. # 1.

## II

## BACKGROUND

Petitioner is a citizen of Mexico who entered the United States in 1999. Dkt. # 9 at 2. In 2013, he was arrested for driving under the influence (DUI) in Oregon. Dkt. # 9 at 2. He was convicted and sentenced to two days in jail and two years of probation. Dkt. # 9 at 2. While

Petitioner was in jail, ICE took him into immigration custody. Dkt. # 9 at 2. Immigration authorities issued Petitioner a Notice to Appear stating that he was removable under Section 212(a)(6)(A)(i) of the INA. Dkt. # 9 at 2. They then released Petitioner on a $7,000 bond in December 2013. Dkt. # 9 at 3. In December 2015, Petitioner was sentenced to ten days in jail as the result of a probation violation. Dkt. # 9 at 3.

In March 2021, an immigration judge (IJ) denied Petitioner's applications for asylum and withholding of removal. Dkt. # 9 at 3. Petitioner appealed the decision to the BIA. Dkt. # 9 at 3.

In September 2023, Petitioner was arrested for DUI, reckless driving, and second-degree criminal mischief. Dkt. # 1 at 14. On January 23, 2025, he pleaded guilty to misdemeanor DUI and reckless driving, and the criminal mischief charge was dismissed. Dkt. # 1 at 14. He was sentenced to four days in jail, two years of probation, a $2,000 fine, and required DUI treatment and attendance at a victim-impact panel. Dkt. # 1 at 14. Petitioner states that he has complied with the terms of his sentence. Dkt. # 1 at 14.

Respondents allege that on November 11, 2025, they learned of Petitioner's convictions during "routine record checks." Dkt. # 9 at 3. ICE then issued Petitioner a form indicating that his $7,000 bond would be terminated. Dkt. # 10-1 at 3; Dkt. # 1 at 14. Petitioner states that because of a language barrier, he could not understand the form, so on January 13, 2026, he voluntarily went to the Portland ICE field office to ask about it. Dkt. # 1 at 14-15. While Petitioner was at the field office, ICE canceled his bond—thereby terminating his 13 years of release—and detained him. Dkt. # 9 at 4. Petitioner alleges that when he asked why he was being detained, ICE told him only that it was because of his arrest in 2023. Dkt. # 1 at 15.

Petitioner then joined other detained noncitizens in a class action habeas petition, arguing that "their mandatory detention violated the Immigration and Nationality Act ('INA') because they were entitled to consideration for release on bond under 8 U.S.C. § 1226(a)." *Flores-Velazquez v. Hermosillo*, 2026 WL 523283, at *1 (W.D. Wash. Feb. 25, 2026). The court found that the noncitizens, including Petitioner, were subject to discretionary detention under 8 U.S.C. § 1226(a) and ordered the Government to provide them with bond hearings. *Id.* at *2.

On March 9, 2026, Petitioner received a bond hearing, at which he was not represented by counsel. Dkt. # 9 at 4. The IJ, John Odell, denied Petitioner bond. Dkt. # 10-3. The only documentation of the IJ's decision in the record is a box-check order, and the only reason given for the denial is a single checked box that states Petitioner presents a flight risk and danger to the community. Dkt. # 10-3. Petitioner has not appealed the IJ's decision to the BIA. Dkt. # 9 at 4.

## III

## DISCUSSION

Federal district courts may grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c). "The petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

### A. Administrative Exhaustion

Respondents argue that the Court should require Petitioner to exhaust his administrative remedies before seeking habeas relief. Dkt. # 8 at 6-11.[1]

---

[1] Respondents argue that in the alternative, the Court should stay these proceedings for a minimum of 30 days so the IJ can issue a written memorandum. Dkt. # 8 at 2. The Court denies this request. The IJ was required to provide his legal reasoning when he denied bond more than seven months

For habeas claims, "[t]he exhaustion requirement is prudential, rather than jurisdictional[.]" *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). In determining whether prudential exhaustion is required, courts typically begin by considering the "*Puga* factors." These factors are: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). But "even if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement" if at least one of the "*Laing* factors" applies. *Hernandez*, 872 F.3d at 988. Such factors are: "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

Respondents argue that the *Puga* factors favor requiring administrative review. Dkt. # 8 at 8-9. But when applying the *Puga* factors to IJ bond denials in check-box format without further rationale to support the decision, courts in this District have repeatedly found that administrative exhaustion is not required. *See Ascencio-Zetino v. Scott*, 2026 WL 2686835, at *2-3 (W.D. Wash. Sept. 14, 2026) (waiving administrative exhaustion where the IJ provided no

---

ago. 8 C.F.R. § 1003.19(f) ("The determination of an Immigration Judge with respect to custody status or bond redetermination shall be entered on the appropriate form at the time such decision is made and the parties shall be informed orally or in writing of the reasons for the decision."); *see Sabillon Munoz v. Scott*, 2026 WL 2694273, at *4-5 (W.D. Wash. Sept. 14, 2026) (denying the same request).

explanation for finding that petitioner was a flight risk); *Medina Romero v. Hernandez*, 2026 WL 2568562, at *2 (W.D. Wash. Aug. 31, 2026) (same); *Shirley v. Scott*, 2026 WL 2833676, at *3 (W.D. Wash. Sept. 22, 2026).

Additionally, even if the *Puga* factors weighed against Petitioner, the Court concludes that Petitioner has met his burden of demonstrating irreparable injury under *Laing*. Respondents argue that Petitioner has failed to articulate irreparable harm unique to him as required under *Laing*. Dkt. # 8 at 9-10. But courts in this District have also "repeatedly found" that requiring detained noncitizens who bring petitions challenging their bond denial "to wait for BIA review while in custody will 'inflict the kind of harm that the bond hearing was designed to prevent—that is, prolonged detention without meaningful process'—and that such harm satisfies 'irreparable injury' under *Laing*." *Cardoza-Garcia v. Hernandez*, 2026 WL 2294541, at *3 (W.D. Wash. Aug. 10, 2026) (quoting *Garcia Miranda v. Hernandez*, 2026 WL 1328227, at *3 (W.D. Wash. May 13, 2026)); *see also Roberts v. Scott*, 2026 WL 2071146, at *4 (W.D. Wash. July 17, 2026) (finding that petitioner would have suffered irreparable injury "during the long wait" for BIA appeal of her bond denial).

Here, Petitioner has been detained for over nine months, and seven months have passed since his bond hearing. Accordingly, the Court concludes that this case warrants waiver of the prudential exhaustion requirement and proceeds to the merits.

B. Abuse of Discretion

Petitioner argues that the IJ abused his discretion by denying bond and finding that Petitioner was a flight risk and danger to the community in a check-box order without applying the governing standards. Dkt. # 1 at 17-18.

A habeas court has jurisdiction to review an IJ's bond determination for an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784-85 (9th Cir. 2024). "Under an abuse of discretion standard, [a federal court] cannot reweigh evidence . . . but can only determine whether the BIA applied the correct legal standard." *Id.* (cleaned up and citation omitted). And while the administrative scheme clearly "contemplates discretionary bond determinations by IJs—not federal district courts"—it is also true that "[b]ond determinations must bear a rational relationship between the governing legal standards and the facts and evidence in a given case." *Calderon v. Mullin*, 2026 WL 1487774, at *2 (W.D. Wash. May 28, 2026); *Soto Gimenez v. Hernandez*, 2026 WL 1156075, at *8 (W.D. Wash. Apr. 29, 2026).

When making bond determinations, IJs may consider the following factors:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Ascencio-Zetino*, 2026 WL 2686835, at *4 (quoting *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

Several courts in this District have found that an IJ's check-box order finding that a petitioner is a flight risk or danger to the community without further explanation constitutes an abuse of discretion. *See Id.* (concluding that a check-box order finding that petitioner was a flight risk was an abuse of an IJ's discretion because there was "no indication whatsoever that any of [the *Guerra*] factors were weighed," as the record did not contain information about the

evidence the IJ "considered in denying Petitioner's bond request or what legal standard was used"); *Hernandez*, 2026 WL 2814250, at *2 (concluding that an IJ who denied bond for a petitioner with a recent DUI conviction abused his discretion by relying solely on check-box findings for flight risk and danger to the community because "the checkbox-form order issued by the IJ does not reflect consideration of the *Guerra* factors or explain how they apply to Petitioner's circumstances"); *see also Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026) (concluding that an IJ abused her discretion by failing to explain how *Guerra* factors applied to the evidence listed in the bond hearing memorandum).

Respondents' only argument in response to Petitioner's substantive claims challenging his bond hearing is that "[b]ecause the IJ relied on factors expressly contemplated by *Guerra* and subsequent precedent, the bond memorandum reflects a reasonable, individualized flight-risk determination." Dkt. # 8 at 13. Respondents point to nothing in the record showing that the IJ considered the *Guerra* factors or applied them to the evidence presented. *See Medina Romero*, 2026 WL 2568562, at *4.

The Court notes that it is unclear from the record exactly what evidence was presented at the bond hearing. In his traverse, Petitioner includes a declaration stating that because he was detained and unrepresented, he was "unable to gather and present statements from [his] family members, friends, and employer, and other evidence to support [his] release during the hearing." Dkt. # 11-1 at 4. Regarding the hearing itself, Petitioner says that it "was very brief," and the IJ did not ask him any questions. Dkt. # 11-1 at 4. Petitioner alleges that the IJ told him that bond was denied "because of [his] arrest." Dkt. # 11-1 at 5.

Petitioner's traverse also includes evidence that DHS submitted his I-213 Record of Deportable/Inadmissible Alien form to the IJ for the hearing. Dkt. # 11-2 at 9. The I-213 form

(which Respondents also present as evidence but do not reference in their arguments) states that in November 2025, ICE discovered Petitioner's January 2025 convictions for a DUI and reckless driving. Dkt. # 11-2 at 11. The form notes that Petitioner has two previous convictions for DUIs and a probation violation and states that "[t]hese prior offenses along with his most recent conviction of [DUI] indicate subject is public safety risk." Dkt. # 11-2 at 11.

But this evidence of misdemeanor convictions for nonviolent crimes "speaks to only one of the *Guerra* factors that the IJ was required to weigh." *Hernandez*, 2026 WL 2814250, at *2; *see also Sabillon Munoz*, 2026 WL 2694273, at *6 ("Courts in this district have found that IJs abuse their discretion when they base a dangerousness finding on the mere existence of past arrests for minor, nonviolent offenses without 'explaining how these remote arrests outweigh the overwhelming evidence of a noncitizen's good character and community ties.'" (quoting *Garcia*, 2026 WL 1328227, at *4) (cleaned up)); *Medina Romero*, 2026 WL 2568562, at *4 ("Although a noncitizen's criminal record is relevant in a bond assessment, 'the recency and severity of the offenses must be considered.'" (quoting *Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011)).

With only a check-box form stating that Petitioner posed a flight risk and danger to the community and an alleged vague reference to Petitioner's "arrest" as evidence of the IJ's rationale for denying bond, the Court cannot conclude that the IJ applied the *Guerra* factors to the evidence as required. As a result, the Court concludes that the IJ abused his discretion in denying bond, thereby violating Petitioner's due process rights under the Fifth Amendment and entitling him to habeas relief.[2]

---

[2] Petitioner also argues that his re-detention in January 2026 without pre-deprivation process violated his due process rights. Dkt. # 1 at 18. And Respondents argue that the petition should be denied as an abuse of writ regarding Petitioner's due process challenges to his re-detention in January 2026 because he could have brought these claims in his prior habeas petition. Dkt. # 8 at 5-6. Because the Court concludes that Petitioner's bond proceedings—which occurred well after, and as a result of, his

C. Remedy

Petitioner requests habeas relief in the form of immediate release. Dkt. # 1 at 24. Courts in this District have granted such relief in similar circumstances, concluding that petitioners are entitled to immediate release when their due process rights have been violated due to an IJ's abuse of discretion in denying bond. *See Ascencio-Zetino*, 2026 WL 2686835, at *4; *Hernandez*, 2026 WL 2814250, at *3; *Medina Romero*, 2026 WL 2568562, at *5; *Roberts*, 2026 WL 2071146, at *10; *Vasquez Lopez*, 830 F. Supp. 3d at 1103. The Court thus finds that immediate release on reasonable conditions of supervision is the appropriate remedy.

## IV

## CONCLUSION

For these reasons, the Court GRANTS the habeas petition (Dkt. # 1) and ORDERS that Petitioner be released from custody within 24 hours of this Order, subject to reasonable conditions. The Court further ORDERS that Petitioner shall not be re-detained until after a hearing before a neutral decisionmaker and adequate notice.

Petitioner also requests attorney fees and costs under the Equal Access to Justice Act. *See* 28 U.S.C. § 2412(d)(1)(A). To be eligible for fees under the EAJA, a petitioner must submit an application within 30 days of final judgment. *See* 28 U.S.C. § 2412(d)(1)(B). Accordingly, Petitioner may file a motion with such request no later than November 15, 2026.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

---

prior habeas petition—were legally deficient and grants Petitioner release, it need not address these arguments.

Dated this 16th day of October, 2026.

John H. Chun
United States District Judge